NOT FOR PUBLICATION (Docs. No. 30, 31, 32)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| David ATIS, *on behalf of himself and those similarly situated*, | : : : : | |
| Plaintiff, | : : | Civil No. 15-3424 (RBK/JS) |
| v. | : : | **Opinion** |
| FREEDOM MORTGAGE CORPORATION, | : : : | |
| Defendant(s). | : : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiff David Atis's ("Plaintiff") Complaint against Defendant Freedom Mortgage Corporation ("Defendant") asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a et seq., and New Jersey Wage and Payment Act ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1 et seq. Currently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 30), Plaintiff's Motion for Class Certification (Doc. No. 31), and Plaintiff's Motion to Seal (Doc. No. 32). For the reasons expressed below, Defendant's Motion to Dismiss the NJWPL claims is **GRANTED**, Plaintiff's Motion for Class Certification is **GRANTED IN PART**, and Plaintiff's Motion to Seal is **DENIED**.

1

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. AVPs

Named Plaintiff David Atis brings this action on behalf of himself and others similarly situated. Plaintiff alleges that Defendant, an originator and servicer of mortgage loans, improperly denied overtime pay to employees in the position of Assistant Vice President of Sales ("AVP") . Pl.'s Mot. for Class Certification ("MFCC") Br. ¶ 5. Defendant employs approximately 330 AVPs in eight offices throughout the United States: Mount Laurel, New Jersey; Melville, New York; Columbia, Maryland; Jacksonville, Florida; Fort Washington, Pennsylvania; Fishers, Indiana; Phoenix, Arizona; and San Diego, California. *Id.* ¶¶ 8–11. Defendant employs about 135 AVPs in the Mount Laurel, New Jersey location. *Id.* ¶ 10.

AVPs sell loan and mortgage products to customers. *Id.* ¶ 12. Their job duties generally consist of speaking with and asking customers about their mortgage needs, assessing those needs, gathering detailed data to complete mortgage applications, interpreting data, running credit reports, running automated underwriting systems, and finding suitable mortgage products. Hayden Dep. 17–18. Upon identifying an appropriate product, AVPs negotiate rates, fees, and terms, and explain the process to expect between origination and closing. *Id.* at 18. They do not supervise anyone. Pl.'s MFCC Br. ¶ 16.

AVPs are assigned work on different campaigns depending on business needs. *Id.* ¶ 13; Hayden Dep. 44. Campaigns differ in customers (current versus new), loan products (Veterans Administration, Federal Housing Administration, or conventional mortgages), and lead sources (whether the customer reached out to Defendant or vise versa), Def.'s MFCC Opp'n Br. 3–4. Some campaigns involve all types of loans. *Id.* at 5–6. Even between different campaigns, however, the job duties of AVPs remain the same with the exception of information gathering.

Pl.'s MFCC Br. ¶¶ 13–14; Hayden Dep. 24. AVPs need not collect new information from existing customers but merely confirm existing information, for example. Hayden Dep. 43. Furthermore, AVPs vary in the discretion they have to continue speaking with a customer who seeks a loan outside of the campaign versus transferring the call to the appropriate team. Def.'s MFCC Opp'n Br. 7–8. The responsibilities of AVPs also remain the same between different branches. Pl.'s MFCC Br. ¶ 14.

The expected work schedule of AVPs is five shifts of nine hours with a one hour lunch break, on a weekly basis, and one half shift of four hours every other Saturday. *Id.* ¶¶ 20–23. They are classified as exempt under the administrative exemption of FLSA and do not receive overtime pay. Def.'s MFCC Opp'n Br. 17. They are instead paid a base salary and a monthly variable of commission, calculated based on a set formula. Pl.'s MFCC Br. ¶ 24; Hayden Dep. 23–24. Compensation of AVPs is calculated in the same manner across all offices. Pl.'s MFCC Br. ¶ 35.

Defendant claims it did not track the hours worked by AVPs. Def.'s MFCC Opp'n 9. AVPs must log into a phone system, I3, in order to place calls, but AVPs do not necessarily log in if they are completing non-telephone work or log out at the end of a workday. *Id.* at 9–10. AVPs also log time entries in the Ultipro software, but the parties dispute whether the time entries are limited to days taken for Personal Time Off and vacation or are more comprehensive. *See* Pl.'s MFCC Br. ¶ 29–30; Def.'s MFCC Opp'n 11. At least some AVPs have "Time & Attendance Reports" that contain daily time entries over the course of several months. *See* Pl.'s MFCC Br. Exs. N, P, R, T.

### B. David Atis

Named Plaintiff Atis worked as an AVP for Defendant from January 27, 2014 to September 2, 2014. *Id.* ¶ 36. Defendant instructed him to work a weekly schedule of five shifts of nine hours with a one hour lunch break, plus a one half shift of four hours every other Saturday. *Id.* ¶¶ 41–43. He regularly worked more that forty hours per week, as he alleges. *Id.* ¶¶ 37, 44–52. He was told his compensation would consist of a salary and bonus. *Id.* ¶¶ 38–40.

### C. Procedural History

Plaintiff filed a Complaint asserting violations of the FLSA, NJWHL, and NJWPL on May 15, 2015 (Doc. No. 1). Plaintiff twice amended the Complaint, on September 21, 2015 (Doc. No. 14) and November 16, 2015 (Doc. No. 20). The parties conducted discovery until March 30, 2016 (Doc. No. 28). On April 28, 2016, Defendant brought the present Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 30). On April 29, 2016, Plaintiff filed the Motion for Class Certification (Doc. No. 31) and Motion to Seal Document (Doc. No. 32) that are presently before the Court.

## II. MOTION TO DISMISS

### A. Legal Standard

Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and alleges that a plaintiff has failed to state a claim, it is treated under the same standards as a Rule 12(b)(6) motion. *See Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted). Under Rule 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

4

may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### B.  Discussion

Defendant moves to dismiss claims brought under the NJWPL, arguing that claims for unpaid overtime wages are properly brought under the NJWHL. The NJWPL, N.J. Stat. Ann. § 34:11-4.1 et seq., "governs the time and mode of payment of wages due to employees." *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 457 (N.J. 2015). It contains provisions that, for example, require employers to pay the full amount of wages due at least twice each month and refrain from withholding or diverting a portion of wages except in limited circumstances. N.J. Stat. Ann. §§ 34:11-4.2, 34:11-4.4. The statute of limitations of a NJWPL claim is unclear, but one court in this District has held it to be six years. By contrast, the NJWHL, N.J. Stat. Ann. § 34:11-56a et seq., "establishes . . . an overtime rate for each hour of work in excess of forty hours in any week for certain employees." *Hargrove*, 106 A.3d at 458. The statute mandates that an employer pay "1 ½ times such employee's regular hourly wage for each hour of working time in

5

excess of 40 hours in any week." N.J. Stat. Ann. § 34:11-56a. Claims under the NJWHL are subject to a two-year statute of limitations period. N.J. Stat. Ann. § 34:11-56a25.1.

Reading the plain language of the NJWPL, the Court finds that the statute does not support a claim for unpaid overtime wages. The statute regulates the mechanics of when and how wages must be paid. *See, e.g.*, N.J. Stat. Ann. § 34:11-4.2 ("Time and mode of payment; paydays"). Plaintiff, however, attempts to shoehorn its claim under the NJWPL's provision prohibiting the withholding or diverting of wages. Section 34:11-4.4, however, concerns the permissibility of withholdings and diversions for benefits, securities, savings, charities, and the like — categorically distinct from overtime pay. *See* N.J. Stat. Ann. § 34:11-4.4. Further, courts in New Jersey and this District have generally held that claims for overtime should be brought under the NJWHL and not the NJWPL. The New Jersey Appellate Court found an employee could not bring an action for unpaid overtime under the NJWPL's provision on withholding or diverting wages. *See Chavarriaga v. Ross Pub. Affairs Grp., Inc.*, 2011 WL 2713466, at *5 (N.J. Super. Ct. App. Div. July 14, 2011) (per curiam). And courts in this District have recognized that "claims for failure to pay overtime are brought under the NJWHL." *Mitchell v. C & S Wholesale Grocers, Inc.*, No. Civ. 10-2354 (JLL), 2010 WL 2735655, at *5 (D.N.J. July 8, 2010); *see also Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. Civ. 13-552 (ES), 2014 WL 3014284, at *5 n.6 (D.N.J. July 3, 2014) ("Plaintiff seems to be seeking overtime payment, which is not addressed by the NJWPL."). Because the NJWPL does not concern the payment of overtime wages, Plaintiff's NJWPL claims are dismissed with prejudice. The Court grants Defendant's Motion to Dismiss.

### III. MOTION FOR CONDITIONAL CLASS CERTIFICATION UNDER THE FLSA

#### A. Conditional or Final Certification

Plaintiff seeks conditional certification of a collective action under the FLSA. It is well-established that an employee alleging that her employer has not met the wage and hour requirements outlined in the FLSA may bring a collective action on behalf of herself and a group of similarly situated individuals. 29 U.S.C. § 216(b). To proceed under this collective cause of action a party must demonstrate that class members are "similarly situated" and that the members affirmatively consent to join the action. *Herring v. Hewitt Assocs., Inc.*, No. Civ. 06-267 (GEB), 2007 WL 2121693, at *2 (D.N.J. July 24, 2007); *see also Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 496 (D.N.J. 2000) ("The primary issue to be decided [in a motion to certify a collective action] is whether the named plaintiffs are sufficiently 'similarly situated' to the opt-in plaintiffs such that this case may proceed as a collective action." (quoting 29 U.S.C. § 216(b))).

The Third Circuit uses a two stage analysis when deciding whether a FLSA opt-in collective action can move forward. *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 n.5 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523 (noting that the two-tiered approach is not mandated but appears to have gained wide acceptance). The first stage is a conditional certification where plaintiffs must make a "modest factual showing" to establish that they are similarly situated. *Id.* at 193. The second stage, or final certification, occurs after notice and the discovery process take place. *Id.* The final certification stage requires a plaintiff to demonstrate by "a preponderance of the evidence that members of a proposed collective action are similarly situated." *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 537 (3d Cir. 2011). The comparison is between "each plaintiff who has opted in to the collective action [and] the named plaintiff."

*Symczyk*, 656 F.3d at 193. Because this determination necessarily entails such a fact-intensive inquiry, the final certification should take place "after discovery is largely complete and the case is ready for trial." *Morisky*, 111 F. Supp. 2d at 497 (citations omitted); *see also Herring*, 2007 WL 2121693 at *4 (finding that although some discovery had taken place, the case was not "ready for trial" and thus final certification of the opt-in members was not appropriate).

As an initial matter, Defendant argues that the Court should skip the first stage of deciding conditional certification and move directly to the second stage, by applying the stricter standard required for final certification. Some courts in this District have indeed proceeded directly to determining final certification, most notably in a FLSA action where the class already had one hundred potential opt-in plaintiffs and discovery was complete. *Morisky*, 111 F. Supp. 2d at 497–98. In the instant matter, the Court notes that Plaintiff has had six months to conduct discovery as to class certification, and the parties have conducted discovery of the named Plaintiff, four potential opt-in Plaintiffs, and Defendant's corporate designee. Ultimately, however, the Court finds it inappropriate to decide final certification at this point. The second stage requires that the Court decide whether the named plaintiff is similarly situated to opt-in plaintiffs, and it cannot make such a determination where individuals have not had an opportunity to opt in. Moreover, the Third Circuit has explicitly recognized that this Circuit's approach to FLSA certification is two-stepped, *Zavala*, 691 F.3d at 536, and this Court will not eschew that framework unless it is entirely clear the case is not suitable for the first step of analysis. Accordingly, the Court proceeds to evaluate Plaintiff's Motion on the initial question of conditional certification.

    **B.    Conditional Certification**

The first stage of the collective action certification process consists of conditional certification and notice. During this stage, the court determines whether the plaintiff has made a "'modest factual showing' that the proposed recipients of opt-in notices are similarly situated." *Symczyk*, 656 F.3d at 192 (citations omitted). At this stage, the court uses a "fairly lenient standard," often requiring "nothing more than substantial allegations that the putative class members were together victims of a single decision, policy, or plan." *Zavala*, 691 F.3d at 535 (citations omitted). The plaintiff bears the burden of demonstrating that he is similarly situated to the proposed class. *See Symczyk*, 656 F.3d at 192. In order to meet that burden, the plaintiff must show at least "a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* Generally, courts "examine the pleadings and affidavits in support of or in opposition to the proposed collective action to make this determination." *Herring*, 2007 WL 2121693, at *5. The court need not evaluate the merits of the plaintiff's claims, or complete discovery in order to grant conditional certification and facilitate notice. *Id.*

Plaintiff seeks certification of a class of all AVPs who worked overtime while employed by Defendant within the last three years. Plaintiff presents evidence that all AVPs were classified as exempt, were expected to regularly work over forty hours a week, and denied overtime pay for the hours worked in excess of forty. In addition, Plaintiff shows that AVPs overwhelmingly have the same job responsibilities across both campaigns and offices, as testified to by Defendant's corporate designee, named Plaintiff, and opt-in Plaintiffs. Defendant attempts to counter such evidence by pointing out differences in campaigns, how much discretion AVPs had to take versus transfer a call regarding a different campaign, and variations in the length of lunch breaks and overtime work. Such distinctions, however, fail to refute evidence that the job duties

themselves did not vary even if the substance of the campaigns did and the general policy that AVPs were to work overtime hours. Plaintiff has made more than a modest factual showing that the proposed opt-in class members are substantially similar. As a result, the Court hereby grants the motion for conditional certification for the purpose of notice.

### C. Notice

Plaintiff seeks to certify a class of all AVPs who were employed by Defendant in the three years preceding the date the Complaint was filed. Plaintiff also requests that the Court order Defendant provide the last known names, mailing addresses, email addresses, and phone numbers for all such AVPs. Plaintiff requests the information in electronic, tabular format, with different columns for first name, last name, stress address, city, state, zip code, country, phone number, and email address.

A collective action under the FLSA commences for a non-named Plaintiff when she files a written consent and not when the Complaint is filed. *See* 29 U.S.C. § 256(b). Accordingly, this Court defines the class as: All persons who are or were employed by Freedom Mortgage Corporation as an Assistant Vice President of Sales in any of its offices during the three years prior to the date of notice, classified as exempt, and not paid overtime compensation for each hour worked beyond forty (40) hours in a workweek. Regarding the request for specific information regarding class members, courts generally do not order the disclosure of personal information beyond mailing addresses, absent a showing that notice via first class mail would be insufficient. *Steinberg v. TD Bank, N.A.*, No. 10-CV-5600 (RMB-JS), 2012 WL 2500331, at *7 (D.N.J. June 27, 2012). Plaintiff proffers no such evidence in this case. Thus, the Court orders that Defendant release only last known names and mailing addresses for the purpose of notice.

Lastly, the Court orders that Defendant provide this information in electronic, tabular format within five (5) business days of Court approval of the notice.

As to the notice, the Court orders the parties to meet and confer regarding the notice, in accordance with this Opinion, and file a joint, proposed notice for the Court's approval within twenty-one (21) days of entry of the accompanying Order.

## IV.  MOTION FOR CLASS CERTIFICATION UNDER RULE 23(B)(3) AND RULE 23(B)(2)

Plaintiff seeks class certification under Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2) on behalf of all AVPs who worked over forty hours during at least one workweek from six years prior to the filing of the Complaint. Because the Court has dismissed Plaintiff's claims under the NJWPL, the Court will only consider class certification under the NJWHL. In order to qualify for class certification under Rule 23, a plaintiff must satisfy the threshold requirements of Rule 23(a) as well as the one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). The four threshold requirements of Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. As Plaintiff seeks certification under Rule 23(b)(3), he must also show that common questions of fact among class members predominate and that a class action is the superior method for adjudicating the controversy.

A plaintiff bears the burden of demonstrating that Rule 23's requirements are met by a preponderance of the evidence, and the district court "must make whatever factual and legal inquires are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 306 (3d Cir. 2008). In demonstrating compliance with Rule 23 "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question[;] certification is proper only if the

trial court is satisfied, after a rigorous analysis, that the prerequisites . . . have been satisfied." *Dukes*, 564 U.S. at 350 (internal citations and quotations omitted).

In addition to the above explicit requirements for class certification, there are implicit requirements. Class certification presupposes the existence of an actual class. *White v. Williams*, 208 F.R.D. 123, 129 (D.N.J. 2002). The class may not be "amorphous, vague, or indeterminate" and it must be "administratively feasible to determine whether a given individual is a member of the class." *Id.* (citations omitted). In addition, a putative class is not appropriate for certification if class membership would "require fact-intensive mini-trials." *Solo v. Bausch & Lomb Inc.*, No. 06-MN-77777-DCN, 2009 WL 4287706, at *4 (D.S.C. Sept. 25, 2009). As an initial matter, the Court finds that Plaintiff meets these implicit requirements because it will be easy enough to determine which individuals worked as AVPs for Defendant during the relevant time period and, for the reasons expressed below, adjudication of each class member's claims will not require the Court to conduct fact-intensive mini-trials.

    **A.**    **Rule 23(a) Factors**

        *1.*    *Numerosity*

In this Circuit, a plaintiff can generally establish the numerosity requirement under Rule 23(a)(1) if she demonstrates that there are more than forty potential class members. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012). The moving party must establish the number of potential class members, or at least a reasonable estimate of that number, with competent evidence. 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.22[3][a] (3d ed. 1999). In this case, Plaintiff offers evidence that the proposed class contains around 135 members, the number of AVPs employed by Defendant in New Jersey. This action thus satisfies the numerosity requirement.

       2.     *Commonality/Predominance*

Where an action proceeds under Rule 23(b)(3), as here, "the commonality requirement 'is subsumed by the predominance requirement'" set forth in Rule 23(b)(3). *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997)).

To certify a class under Rule 23(b)(3), "questions of law or fact common to class members" must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s predominance requirement is "far more demanding" than the commonality requirement set forth in Rule 23(a). *Amchem Prods.*, 521 U.S. at 623–24. "[W]here individual stakes are high and disparities among class members [are] great," courts should be hesitant to find that predominance exists. *Id.* at 625.

The Court finds that common questions predominate over questions affecting individual class members. To prevail on its NJWHL claim, Plaintiff must show that Defendant misclassified AVPs as exempt, by proffering evidence regarding their duties and degree of discretion. Determining the status of class members may require individual treatment where job position or job duties vary within the class. *See Morisky*, 111 F. Supp. 2d at 499; *Aquilino v. Home Depot, U.S.A., Inc.*, No. CIV.A. 04-04100 PGS, 2011 WL 564039, at *9 (D.N.J. Feb. 15, 2011). Here, however, Plaintiff has shown that AVPs hold the same job title and have overwhelmingly the same the job responsibilities. Thus, proving misclassification will require evidence that is common to the class, not individualized proofs.

Defendant proceeds to argue that damages will require individualized calculations, such that the damages issue predominates over any questions common to the class. While "the calculation of individual damages is necessarily an individual inquiry," *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 305 (3d Cir. 2005), the plaintiff must nonetheless demonstrate that some model exists by which the Court can measure damages on a classwide basis, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). Plaintiff responds that it can satisfy its burden by furnishing representative or statistical evidence regarding the number of hours worked by a typical class member, pursuant to the Supreme Court's ruling in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016). Plaintiff misreads the *Tyson Foods* holding. There, the Supreme Court found a representative or statistical sample to sufficiently show the predominance element because the employer had failed to maintain adequate records of employee hours in contravention of legal obligations. *Id.* at 1047. The Court reasoned that the employee-plaintiffs should not be disadvantaged by the employer-defendant's failure to perform a statutory duty. *Id.* Here, by contrast, Defendant had no statutory duty to track the hours worked by AVPs, as exempt employees, *see* 29 C.F.R. § 516.3, and thus *Tyson Foods* is inapposite.

Despite the futility of representative or statistical evidence to proving damages, Plaintiff nonetheless points to other models through which to assess classwide damages. Foremost, it appears to be company policy that AVPs work overtime at least once every other week. Furthermore, at least some AVPs appear to have "Time & Attendance" reports that list the times they worked on a daily basis. *See* Pl.'s MFCC Br. Exs. N, P, R, T. Defendant attempts to characterize these reports as inaccurate by showing that the opt-in plaintiffs are missing time entries for some months of the relevant statutory period. *See* Def.'s MFCC Opp'n Br. Exs. H–K. These arguments, however, simply show that the reports may not be comprehensive; they do not

14

contradict the accuracy of the records that do exist. Thus, Plaintiff has demonstrated that common questions predominate over individual ones as to the elements required in a NJWHL claim and the calculation of damages. The Court finds in Plaintiff's favor on the requirement of commonality and predominance.

### 3. Typicality

The third threshold requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A named plaintiff's claims are typical where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). Furthermore, the typicality requirement precludes certification of classes where the legal theory of the named plaintiff potentially conflicts with the legal theory of the unnamed class members. *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994).

The named Plaintiff here, Atis, brings claims typical of those of the class: the claims arise from Defendant's alleged misclassification of AVPs as exempt employees, and all class members will prove liability using the same arguments, that the nature of their job renders the administrative exemption inapplicable. In addition, there is no reason to suggest Atis's legal theory will conflict with that of other class members. The Court thus finds that typicality exists.

### 4. Adequacy

The fourth threshold requirement of Rule 23(a) is that the plaintiff as class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement has two components. First, the court considers whether a plaintiff's attorney is qualified, experienced, and able to conduct the litigation. *In re Prudential Ins. Co.*

*Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). Second, it considers whether there are any conflicts of interest between the named party and the class she seeks to represent. *Id.*

Plaintiff in this case has demonstrated adequacy. Plaintiff's counsel describes its experience litigating class actions and thus shows it is qualified, experienced, and able to conduct the litigation. There is also no evidence of any conflicts of interest between Atis and the potential class. As such, the Court finds that Plaintiff has demonstrated the adequacy requirement.

### B. Rule 23(b)(3) Factors

#### 1. *Predominance*

As the Court discussed in Part IV.A.1, predominance exists.

#### 2. *Superiority*

Under Rule 23(b)(3), the district court must also find that the class action device is superior to all other available means of handling the litigation. *Id.* at 314. Rule 23(b)(3) provides a list of four factors that the district court may use to determine whether the plaintiff satisfies the superiority requirement: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Here, all four factors support the class action device as the superior mechanism of adjudicating the case. Where individual claims are modest, class members' interest in bringing individual actions is low. *See id.* at 316. That is the case here, where individual claims are small in monetary value. The Court is aware of no other litigation concerning the controversy.

Concentrating the litigation in a court in New Jersey is appropriate given that the action concerns a New Jersey statute. Lastly, management difficulties are less likely where common questions predominate. The Court thus finds that Plaintiff has sufficiently shown superiority. The case meets all the requirements of Rule 23(a) and Rule 23(b)(3).

### C. Rule 23(b)(2) Factors

Plaintiff also seeks to certify a class under Rule 23(b)(2). Courts have approached requests for certification under both Rule 23(b)(2) and Rule 23(b)(3) in various ways. Some courts have certified the portion requesting injunctive relief under Rule 23(b)(2) and the portion requesting damages under Rule 23(b)(3). *Wilson v. Cty. of Gloucester*, 256 F.R.D. 479, 492 (D.N.J. 2009). Others have only permitted class certification to proceed under Rule 23(b)(3), because Rule 23(b)(2) does not permit certification where class members would be entitled to individual monetary damages. *Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 320–21, 330 (D. Del. 2012); *see also Dukes*, 564 U.S. at 362–63. In this case, however, the Court need not determine whether it can simultaneously certify the class under Rule 23(b)(3) and Rule 23(b)(2) because the NJWHL does not provide injunctive relief. *See* N.J. Stat. Ann. § 34:11-56a22–56a25. As such, Plaintiff's motion for class certification under Rule 23(b)(2) is denied.

### D. Class Counsel and Notice

Because the proposed class meets the requirements of Rule 23(a) and Rule 23(b)(3), it is suitable for certification. However, a court that certifies a class must appoint class counsel. Fed. R. Civ. P. 23(g)(1). In appointing class counsel, the court must consider:

> (i) [T]he work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

The applicant must also fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(4). The Court finds that Plaintiff's counsel has the experience litigating class actions involving wage and hour claims to meet the adequacy requirements of Rule 23(g)(1) and Rule 23(g)(4), and is appointed class counsel.

Plaintiff seeks to certify a class of all AVPs who were employed by Defendant in New Jersey in the six years preceding the date the Complaint was filed. Plaintiff also requests that the Court facilitate notice. Because the statute of limitations governing claims under the NJWHL is two years prior to when a complaint is filed, the Court defines the class as: All persons who are or were employed by Freedom Mortgage Corporation as an Assistant Vice President of Sales in New Jersey on or after May 15, 2013, classified as exempt, and not paid overtime compensation for each hour worked beyond forty (40) hours in a workweek. As to the notice, the Court directs the parties to meet and confer regarding the notice, pursuant to the requirements of Federal Rule of Civil Procedure 23(c)(2),[1] and file a joint, proposed notice for the Court's approval within twenty-one (21) days of entry of the accompanying Order.

## V.     MOTION TO SEAL

In this District, Local Civil Rule 5.3(c) governs all motions to seal or otherwise restrict public access to judicial proceedings and materials filed with the Court. In order to place a docket entry under seal, the motion to seal must be publicly filed and describe: "(a) the nature of

---

[1] Prior to approving a class, a district court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In order to satisfy the notice requirement, the proposing party must comply with the guidelines contained in Rule 23(c)(2). Furthermore, due process requires notification of: (1) "the nature of the pending litigation"; (2) the class action's general terms; (3) "that complete information is available from the court files"; and (4) "that any class member may appear and be heard at the Fairness Hearing." *In re Prudential*, 962 F. Supp. at 527. With respect to the manner of providing notice, "[i]t is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause." *Zimmer Paper Prods., Inc. v. Berger & Montague*, 758 F.2d 86, 90 (3d Cir. 1985) (citations omitted).

the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available." L. Civ. R. 5.3(c)(3). The moving party must also file a proposed order containing proposed findings of fact and conclusions of law. *Id.* Plaintiff's Motion to Seal does not address the factors in Rule 5.3(c)(3) with particularity, nor contain proposed findings of fact and conclusions of law. Furthermore, Plaintiff never even filed the materials to be sealed, exhibits attached to its Motion for Class Certification.[2] The Court reminds parties to review the Local Rules with care, and denies the Motion to Seal without prejudice.

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the NJWPL claims is **GRANTED**. Plaintiff's Motion for Conditional Class Certification Under the FLSA and Class Certification Under Rule 23(b)(3) and Rule 23(b)(2) is **GRANTED IN PART**. Plaintiff's Motion to Seal is **DENIED**.

Dated:  12/27/2016                                                s/ Robert B. Kugler

                                                                  ROBERT B. KUGLER

                                                                  United State District Judge

---

[2] Local Civil Rule 5.3(c)(4) describes the procedure by which a party can file materials under temporary sealing pending a motion to seal.

19