<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| DAVID ATIS, *et al.*, *on behalf of himself and those similarly situated* | : : : | |
| Plaintiffs, | : : | Civil No. 15-03424 (RBK/JS) |
| v. | : : | **OPINION** |
| FREEDOM MORTGAGE CORPORATION., *et al.*, | : : : | |
| Defendants. | : : | |

**KUGLER**, United States District Judge:

This matter is before the Court on Plaintiffs' unopposed motion for Preliminary Approval of Class Settlement and Provisional Certification of Settlement Class.  (Doc. No. 79.)  Plaintiffs seek preliminary approval of the parties' Joint Stipulation of Settlement and Release Agreement (Doc. No. 79-3 at Ex. 1-A ("Agreement")), settling wage and hour class claims under Federal Rule of Civil Procedure 23 and the Fair Labor Standards Act ("FLSA").  Plaintiffs also seek appointment of Class Representatives, Class Counsel, a Third Party Administrator, and preliminary approval of certain fees and costs.  (Doc. No. 79-7.)  Plaintiffs' motion is **GRANTED IN PART**.

I.    **BACKGROUND**

   **A.  Initial Suit and Litigation History**

This matter began with the Complaint (Doc. Nos. 1, 14) of Named Plaintiff David Atis, who filed a collective and class action lawsuit against Defendant Freedom Mortgage Corporation, alleging that Defendant violated the FLSA and New Jersey law by failing to pay

certain overtime.  After three years of litigation and several Amended Complaints, the matter now involves Atis, as well as Kathryn Hertzog and Joseph Koeberlein (collectively, "Representative Plaintiffs"), who sue on behalf of themselves and others similarly situated. (Doc. No. 76-1 (Third Am. Compl.))  Atis asserts claims on behalf of himself and New Jersey plaintiffs; Hertzog on behalf of herself and Pennsylvania plaintiffs; and Koeberlein on behalf of himself and Indiana plaintiffs.  (*Id.* at ¶¶ 2–4.)  Representative Plaintiffs allege that Defendant violated the FLSA, the New Jersey Wage and Hour Law, the Pennsylvania Minimum Wage Act, and the Indiana Minimum Wage Law by misclassifying Assistant Vice Presidents of Sales ("AVPs") as exempt employees and not paying them overtime for working more than forty hours in a workweek between May 20, 2013 and June 30, 2016.  (*Id.* at ¶¶ 1–4.)

During the three-year litigation, this Court granted Atis' motion for conditional collective action certification under the FLSA and conditionally certified the class on behalf of "[a]ll persons who are or were employed by Freedom Mortgage Corporation as an Assistant Vice President of Sales in any of its offices during the three years prior to the date of notice, classified as exempt, and not paid overtime compensation for each hour worked beyond forty (40) hours in a workweek."  *Atis v. Freedom Mortg. Corp.*, No. 15-cv-3424, 2016 WL 7440465, at *5 (D.N.J. Dec. 27, 2016).  The Court also granted Atis' motion for class action certification under Federal Rule of Civil Procedure 23(b)(3) and certified the class on behalf of "[a]ll persons who are or were employed by Freedom Mortgage Corporation as an Assistant Vice President of Sales in New Jersey on or after May 15, 2013, classified as exempt, and not paid overtime compensation for each hour worked beyond forty (40) hours in a workweek."  *Id.* at *8; (Doc. Nos. 40, 41, 48.)

### B.  Proposed Settlement

On February 13, 2018, the parties reached a settlement during a mediation with Mark B. Epstein, retired New Jersey Superior Court Judge.  (Pls.' Br. at 3.)  Although Defendant denies liability, Defendant agreed to pay $4,000,000, inclusive of Class Counsel's fees and costs, any service payments, payroll taxes, and the Claims Administrator's fees and expenses, to settle all claims in this action.  (Agreement at § 2.40.)  Under the Agreement, Defendant will pay $4,000,000 into an escrow account controlled by the Claims Administrator, who the parties propose should be Angeion Group, LLC.  (*Id.* at § 3.4.)  Angeion will then distribute payments to members of the Rule 23 and FLSA collective action classes—which the parties now ask to be provisionally certified for settlement purposes only.  (*Id.* at §§ 4.2, 4.7.)

All settlement class members will receive a flat $1,000 payment plus an additional pro-rated amount for each week worked.  (*Id.* at § 4.7(A).)  Opt-in Plaintiffs will receive an additional amount equal to this amount in liquidated damages.  (*Id.*)  Class Counsel's requested fee of thirty-three and one-third percent, Angeion's fees, and service payments will be paid from the settlement fund.  (*Id.* at § 4.7(A)(1), 4.15(A).)  Participating class members will then release Defendant from "any and all state and federal law-based wage-and-hour claims from May 20, 2013, through the date of entry of the *Court's Preliminary Approval Order*."  (*Id.* at § 5.1(A).)  As discussed below, the Agreement also contains limited confidentiality clauses regarding select parties' statements to the press and about settlement negotiations.  (*Id.* at §§ 8.16, 8.17.)

## II.   DISCUSSION

The Court must determine whether to (1) preliminarily approve the parties' proposed Settlement Agreement; and (2) provisionally certify the proposed settlement classes under

Federal Rule of Civil Procedure 23 and the FLSA.  The Court then addresses Plaintiffs' other requests regarding class and third-party appointments and preliminary approval of fees and costs.

### A.  Preliminary Approval of the Proposed Settlement Agreement

#### 1.   Preliminary Rule 23 Settlement Approval

Review of a proposed class action settlement is a two-step process: (1) preliminary approval and (2) a subsequent fairness hearing.  *See Shapiro v. All. MMA, Inc.*, No. 17-cv-2583, 2018 WL 3158812, at *2 (D.N.J. June 28, 2018).  At the first stage, the parties submit the proposed settlement to the court, which makes a preliminary fairness evaluation.  *Id.*  If the proposed settlement is preliminarily acceptable, the Court directs that notice be provided to all class members who would be bound by the proposed settlement to afford them an opportunity to be heard on, object to, and opt out of the settlement.  *Id.*; Fed. R. Civ. P. 23(c)(2), (e)(1), (e)(5).[1]

"Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient."  *Shapiro*, 2018 WL 3158812, at *2; *see also Rudel Corp. v. Heartland Payment Sys., Inc.*, No. 16-cv-2229, 2017 WL 4422416, at *2 (D.N.J. Oct. 4, 2017) (applying "obviously deficient" standard to preliminary approval of class action settlement).  Generally, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."  *Shapiro*, 2018 WL 3158812 (quoting *In re Nasdaq Mkt.-*

---

[1] At the second stage, after class members are notified of the settlement, the Court holds a formal fairness hearing where class members may object to the settlement.  *See Shapiro*, 2018 WL 3158812, at *3; Fed. R. Civ. P. 23(e).  If the Court concludes that the settlement is "fair, reasonable and adequate," the settlement is given final approval.  Fed. R. Civ. P. 23(e)(2).  A court considering final approval of a class action settlement must evaluate the settlement under the factors set out in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

*Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).  "A settlement is presumed fair when it results from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Rudel Corp.*, 2017 WL 4422416, at *2 (citations omitted).

The preliminary approval standards are met here.  The proposed Agreement appears to be the result of an arm's-length negotiation between experienced counsel, reached during mediation with the Honorable Mark B. Epstein, retired New Jersey Superior Court Judge.  *See Alves v. Main*, No. 01-cv-789, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.") *aff'd*, 559 F. App'x 151 (3d Cir. 2014).[2]  By then, the parties had also engaged in sufficient discovery, including the exchange and expert assisted analysis of "thousands of documents and millions of data points." (Pls.' Br. at 7.)  Thus, the parties' were armed with enough information to assess the strengths and weaknesses of their case and strike a deal relative to the risks of prolonged litigation.

Moreover, the relief provided to each participating settlement class member includes a flat payment of $1,000 plus an additional amount of money pro-rated for each week worked during the Class Period.  (Agreement at § 4.7(A).)  Opt-in plaintiffs will receive additional liquidated damages equal to this amount.  (*Id.*)  Defendant has agreed to pay up to $4,000,000, inclusive of counsel fees and costs, any service payments, payroll taxes, and the Claim Administrator's fees and expenses.  (*Id.* at § 2.40.)  At the preliminary approval stage, the Court cannot say that this distribution, negotiated at arm's-length, is obviously deficient.  Finally, no

---

[2] Although "the independence of a mediator is not necessarily assumed when the parties bargain before a hired mediator," the Court finds that the sophisticated parties in this case engaged in sincere negotiations after meaningful discovery.  *See Shapiro*, 2018 WL 3158812, at *2.

evidence suggests that the proposed settlement unreasonably favors Representative Plaintiffs or any class segment.[3] Thus, no "obvious deficiency" exists here.

### 2. Preliminary FLSA Settlement Approval

The FLSA establishes certain "federal minimum-wage, maximum-hour, and overtime guarantees" to employees. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Employees may bring FLSA claims as collective actions, but unlike a class action under Federal Rule of Civil Procedure 23, FLSA collective action plaintiffs must opt-in, or consent in writing filed with the court, to be a party to the action and to be bound by the judgment. *See Davis v. Essex Cty.*, No. 14-cv-1122, 2015 WL 7761062, at *1 (D.N.J. Dec. 1, 2015). Parties may settle such claims by seeking district court approval. *See Singleton v. First Student Mgmt. LLC*, 13-cv-1744, 2014 WL 3865853, at *7–8 (D.N.J. Aug. 6, 2014).

Settlement approval has three steps. *See Davis*, 2015 WL 7761062, at *2; *see also Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-1248, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011) (noting that a court's obligation in approving FLSA settlements is "not to act as caretaker but as gatekeeper" (citation omitted)). First, the Court assesses if the settlement concerns a "bona fide dispute." *See Davis*, 2015 WL 7761062, at *2. Second, the Court assesses if the settlement is fair and reasonable to the Plaintiff-employees, *id*, generally by applying the *Girsh* factors referenced above. *See Dominguez v. Galaxy Recycling Inc.*, No. 12-cv-7521, 2017 WL 2495406, at *6 (D.N.J. June 9, 2017); *Singleton*, 2014 WL 3865853, at *8; *Brumley v. Camin Cargo Control*, No. 08-cv-1798, 2012 WL 1019337, at *4–5 (D.N.J. Mar. 26, 2012). Finally, the

---

[3] The Court emphasizes that any reasonable payments to Representative Plaintiffs and Class Counsel are subject to approval. *See Bernhard v. TD Bank, N.A.*, No. 08-cv-4392, 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009).

Court must ensure that the settlement does not frustrate the FLSA's purposes.  *See Davis*, 2015 WL 7761062, at *2.  All three requirements are met here.

First, the Agreement resolves a "bona fide dispute" because the parties instituted federal litigation and engaged in assorted motion practice to prosecute and defend this dispute about whether Defendant violated wage and hour laws and owed AVPs overtime compensation.  *See Bredbenner*, 2011 WL 1344745, at *18 (stating that disagreements over "hours worked or compensation due clearly establishes a bona fide dispute" (citation omitted)); *see also id.* ("The institution of a federal court litigation followed [by] aggressive prosecution and strenuous defense demonstrates the palpable bona fides of this dispute.").

Second, the Agreement resolves this bona fide dispute in a preliminarily fair and reasonable manner given the *Girsh* factors analysis.[4]  Under *Girsh*, courts evaluate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157.  Here, the first *Girsh* factor supports preliminarily approving the FLSA collective action settlement because the potential costs of trial, in terms of time, money, and effort, could be significant absent settlement.  However, the second factor—the class's reaction to the settlement—is not yet certain, so it is neutral.  Still, the third factor supports preliminary

---

[4] While the issue of final settlement approval under Rule 23—to which the *Girsh* factors also apply—is not presently before the Court, the Court's application of the *Girsh* factors to the preliminary approval of the parties' FLSA settlement also supports preliminary approval of the parties' class action settlement under Rule 23.  *See Shapiro*, 2018 WL 3158812, at *3 (citing *Singleton*, 2014 WL 3865853, at *5 ("While the issue of final settlement approval [under Rule 23] is not presently before the Court, it is important to consider the final approval factors during this stage so as to identify any potential issues that could impede the offer's completion.")).

approval.  As Plaintiff puts it, the parties have engaged in significant litigation efforts for around three years, reviewed and analyzed "thousands of documents and millions of data points, engaged expert witnesses to assist with the same, deposed six witnesses, and engaged in significant motion practice," including motions for class certification.  (Pls.' Br. at 2.)

The fourth, fifth, and sixth *Girsh* factors also support preliminary approval.  All litigation has risk, and the parties appear to have considered, before mediation, calculations about Defendant's potential litigation exposure and assessed their respective views of the facts and applicable law.  (Pls.' Br. at 2.)  Although the seventh factor—Defendant's ability to withstand a greater judgment—is not entirely clear, the eighth and ninth *Girsh* factors support preliminary approval.  As explained above, the Court cannot say at this preliminary stage that the parties' $4,000,000 distribution negotiated at arm's-length is outside the range of reasonableness, particularly when a litigation loss could result in zero recovery for class members.  On balance, the *Girsh* factors thus support preliminarily approving the proposed settlement.

Finally, the Agreement does not appear to frustrate the FLSA's purposes despite its confidentiality and release of claims provisions.  *See Brumley*, 2012 WL 300583, at *3 (noting the "broad consensus" that FLSA settlement agreements should not be confidential); *Singleton*, 2014 WL 3865853, at *8 (stating that "a pervasive release in an FLSA settlement [that] confers an uncompensated, unevaluated, and unfair benefit on the employer should be examined closely" (citation omitted)).

The Agreement's confidentiality clause (Agreement at § 8.16) reads:

> *Plaintiff* agrees that she will not publicize the negotiations with respect to the *Settlement Agreement*.  Nothing in this *Settlement Agreement* shall prohibit *Plaintiff* from disclosing information concerning payments made to her to members of her immediate family and tax advisors.  Further, nothing in this *Settlement Agreement* will prohibit or restrict such disclosure as is required by law or as may be necessary for the prosecution of claims relating to the performance

or enforcement of this *Settlement Agreement*, or prohibit or restrict *Plaintiff* from responding to any inquiry about this *Settlement* or its underlying facts and circumstances from any governmental agency.

This clause is narrowly drawn. "*Plaintiff*" is defined as "the named plaintiff in this *Action*, David Atis." (Agreement at § 2.30.) Thus, the clause restricts only Atis from publicizing *negotiations* with respect to the settlement, and not, for example, Atis or others from publicizing the fact or terms of the settlement to the public, including Defendant's other employees, consistent with the "informational objectives" of the FLSA. *Brumley*, 2012 WL 1019337, at *6–7. Confidentiality clauses that have frustrated the FLSA's purposes have been broader than the limited one here.[5] To be sure, the Agreement contains a "press releases" section, which states that "[n]either *Party* will issue any statements to the press, notify the press of the settlement, or otherwise seek to publicize the fact or details of the *Settlement* in any way outside the *Court*-approved *Settlement* notification process." (Agreement at § 8.17.) But that clause is similarly limited to the "parties," so it applies only to Named Plaintiff Atis and Defendant Freedom Mortgage (Agreement at §§ 2.12 2.29, 2.30). And it prevents them from making statements to the press, which has been found permissible. *See In re Chickie's & Pete's*

---

[5] *See*, *e.g.*, *Mabry v. Hildebrandt*, No. 14-cv-5525, 2015 WL 5025810, at *2–3 (E.D. Pa. Aug. 24, 2015) (denying approval of confidentiality provision that prohibited plaintiff from disclosing "to others the fact or terms of this Agreement, except that [the plaintiff] may disclose such information to his spouse, attorney, and/or accountant . . . " on the grounds that such a provision prevented the plaintiff from discussing the settlement with defendants' employees in contravention of the purposes of the FLSA); *Altenbach v. Lube Ctr., Inc.*, No. 08-cv-02178, 2013 WL 74251, at *3 (M.D. Pa. Jan. 4, 2013) (declining to approve a settlement agreement prohibiting the plaintiff and class counsel from disclosing "any specific information concerning the Settlement with the Defendant, such as the settlement amount, to any person or agency"); *Brumley*, 2012 WL 1019337, at *6–7 (holding that confidentiality provision prohibiting plaintiffs from disclosing "the terms of the Agreement to any person or organization, including but not limited to . . . employees and agents of [the defendant] . . . and other members of the public" "thwarts the informational objective of the notice requirement [of the FLSA] by silencing the employee who has vindicated a disputed FLSA right" and, if enforced, "empowers an employer to retaliate against an employee for exercising FLSA rights" (citations omitted)).

*Wage & Hour Litig.*, No. 12-cv-6820, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014) (holding that "limited" confidentiality provision did not frustrate FLSA when provision did not "prohibit Plaintiffs from discussing this matter with anyone, but only prohibit[ed] Plaintiffs from disparaging Defendants or discussing the substance and negotiations of this matter with the press and media").

Nor does the Agreement's release of claims provision frustrate the FLSA's purposes. That clause states that the releasing persons will release Defendant from "any and all state and federal law-based wage-and-hour claims from May 20, 2013, through the date of entry of the *Court's Preliminary Approval Order*." (Agreement at § 5.1(A).) Although broadly worded, the release is limited to "wage-and-hour" claims. Thus, it does not release claims for harassment or wrongful discharge under any statute or common law, including but not limited to under the FLSA or any state wage and hour law, nor does it release any claims for lost wages due to claims of unlawful termination, wrongful discharge, demotion, or similar adverse employment action. (*See* Pls.' Br. at n.4.)

At this stage, the Court finds the release sufficiently related to the wage and hour claims alleged in this suit and not the kind of overbroad waiver of unrelated claims that has concerned courts. *See Simancas v. Pennsylvania Soup & Seafood House*, No. 17-cv-1895, 2017 WL 7693355, at *1 (E.D. Pa. Nov. 21, 2017) (holding that, in contrast to over-broad releases, proposed release of "any and all wage claims between the parties . . . including but not limited to the Pennsylvania Wage Payment Collection Law and the Pennsylvania Minimum Wage Act . . . and any federal, state and local statute or law relating to hours and wages, and the Fair Labor

Standards Act" was permissible because it "only applies to Plaintiff's wage-related claims" as brought in the complaint).[6]

The release is also limited in time—from May 20, 2013 through the date of the Court's Preliminary Approval Order—and does not release prospective claims arising thereafter. *See Singleton*, 2014 WL 3865853, at *9 (finding release permissible when "written to limit any and all future claims related to the specific litigation, and does not incorporate any FLSA claims or other wage issues the Plaintiffs may allege subsequent to the final approval of a settlement"); *Brumley*, 2012 WL 1019337, at *8 ("The Court finds the release provision to be pervasive to the extent that it incorporates any and all FLSA claims the Plaintiffs may allege regarding violations that Defendants might commit subsequent to the final approval of a settlement in the above-captioned actions by this Court."). Thus, the FLSA settlement is preliminarily acceptable.

### B. Certification of Settlement Classes

Having preliminarily approved the parties' Agreement settling the Rule 23 class claims and the FLSA collective action claims, the Court next considers whether to certify the settlement classes for settlement purposes only. The Court will do so.

---

[6] *Compare Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 532–33 (E.D. Pa. 2016) (finding release overly broad because it precluded plaintiff from raising "any and all" claims she might have against defendants "arising from a laundry list of charges," including but not limited to, "back pay, discrimination, retaliation, harassment," "any and all tort Claims or contract Claims," as well as violations of *"any* federal, state, or local fair employment practices or civil rights laws or ordinances" (emphasis in original)); *Bettger v. Crossmark, Inc.*, No. 13-cv-2030, 2015 WL 279754, at *9 (M.D. Pa. Jan. 22, 2015) (finding release provisions "inappropriately comprehensive" because they precluded "raising *any and all* claims [plaintiff] may have against Crossmark arising prior to the execution date of the agreement and require her to dismiss any charges of discrimination, harassment, or retaliation currently pending with any government agency," "far beyond the pale of the FLSA claim *sub judice*" (emphasis in original)).

1.  Rule 23 Certification of Settlement Classes

"Rule 23 of the Federal Rules of Civil Procedure allows this Court to certify a class for settlement purposes only."  *Chemi v. Champion Mortg.*, No. 05-cv-1238, 2009 WL 1470429, at *6 (D.N.J. May 26, 2009).  Here, Plaintiffs seek an order provisionally certifying a settlement class "consisting of all persons who worked in New Jersey, Pennsylvania, and Indiana as an Assistant Vice President of Sales for Freedom Mortgage Corporation from May 20, 2013 through June 30, 2016."  (Doc. No. 79-7.)  To certify a class for settlement purposes, a district court must determine that the requirements for class certification under Rule 23(a) and (b) are met.  *See In re Pet Food Products Liability Litigation*, 629 F.3d 333, 341 (3d Cir. 2010).  Under Rule 23(a), the parties must demonstrate:

> (1) numerosity (a "class so large that joinder of all members is impracticable");
> (2) commonality ("questions of law or fact common to the class");
> (3) typicality (named parties' claims and defenses "are typical . . . of the class"); and
> (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Id.* at 341 n.14 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)) (alterations omitted).  Under Rule 23(b)(3), certification is proper if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  A plaintiff bears the burden of demonstrating that these requirements are met by a preponderance of the evidence, and the district court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 306 (3d Cir. 2008).  Thus, a district court should certify a class "only if the court is 'satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  *Beck v.*

*Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

a.   Rule 23(a)

i.   Numerosity

Numerosity is satisfied here, as it is presumed "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).   This Court previously certified a New Jersey class involving "around 135" settlement members.  *See Atis v. Freedom Mortg. Corp.*, No. 15-cv-3424, 2016 WL 7440465, at *6 (D.N.J. Dec. 27, 2016).   Plaintiffs also cite to evidence that fifty putative settlement class members exist under Indiana law and sixty-one exist under Pennsylvania law.  (Pls.' Br. at 10.)

ii.   Commonality/Predominance

When, as here, an action is brought under Rule 23(b)(3), the commonality requirement of Rule 23(a) "is subsumed by the predominance requirement" of Rule 23(b)(3).  *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (quoting *Amchem Prods.*, 521 U.S. at 627).   To certify a class under Rule 23(b)(3), "questions of law or fact common to class members" must "predominate over any questions affecting only individual members."   This requirement is "far more demanding" than the commonality requirement set forth in Rule 23(a). *Amchem Prods.*, 521 U.S. at 623–24.  "[W]here individual stakes are high and disparities among class members [are] great," courts should be hesitant to find that predominance exists.  *Id.* at 625.

Common questions predominate over individual ones here, including whether Defendant violated wage and hour laws by misclassifying AVPs as exempt employees under New Jersey, Indiana, and Pennsylvania law, and whether Defendant failed to pay overtime compensation to these employees for working more than forty hour weeks.  The Court's analysis from its decision

13

certifying the New Jersey class is applicable again here, as no evidence suggests that Defendant's policies differ across locations—and Plaintiffs affirmatively note that the policies are uniform (Pls.' Br. at 11).  As the Court held, "Plaintiff has shown that AVPs hold the same job title and have overwhelmingly the same the job responsibilities.   Thus, proving misclassification will require evidence that is common to the class, not individualized proofs." *Atis*, 2016 WL 7440465, at *6.   Moreover, "at least some AVPs appear to have 'Time & Attendance' reports that list the times they worked on a daily basis."  *Id.*   Thus, the Court is satisfied that common questions predominate over individual ones, even if class members' damages vary.  *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977) (stating that "the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate"); *Mesa v. Avalonbay Comm. Inc.*, No. 15-cv-2740, 2018 WL 5278702, at *9 (D.N.J. Oct. 24, 2018) ("Courts routinely certify classes where individual damages inquiries may be necessary following a finding of liability.").

iii.    Typicality

The typicality requirement is satisfied when each class members' claims "arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Atis*, 2016 WL 7440465, at *7 (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).   The typicality requirement precludes certification of classes where the legal theory of the named plaintiff potentially conflicts with the legal theory of the unnamed class members.  *See Atis*, 2016 WL 7440465, at *7 (citing *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994)).

Here, as the Court has previously held, Named Plaintiff Atis, "brings claims typical of those of the class: the claims arise from Defendant's alleged misclassification of AVPs as exempt employees, and all class members will prove liability using the same arguments, that the nature of their job renders the administrative exemption inapplicable. In addition, there is no reason to suggest Atis's legal theory will conflict with that of other class members." *Atis*, 2016 WL 7440465, at *7. Although the Court's previous analysis assessed typicality between Named Plaintiff Atis and New Jersey class members, the factual and legal bases underlying the Indiana and Pennsylvania state law classes and their Representative Plaintiffs appear the same as those of Atis and the New Jersey class. Thus, the "typicality" requirement is met here.

iv.   Adequacy

The fourth requirement of Rule 23(a) requires a plaintiff to show that as class representative he "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This "adequacy" requirement has two components: (1) whether Plaintiffs' counsel is qualified, experienced, and able to conduct the litigation; and (2) whether any conflicts of interest exist between the named parties and the class they seek to represent. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998).

No adequacy issues exist here. As the Court previously held, "Plaintiff's counsel describes its experience litigating class actions and thus shows it is qualified, experienced, and able to conduct the litigation." *Atis*, 2016 WL 7440465, at *7. Nor is there evidence of any conflicts of interest between Atis or the other Representative Plaintiffs and the potential classes.

b.   Rule 23(b)(3)

As the proposed classes meet the requirements of Rule 23(a), the Court now turns to Rule 23(b), which imposes two additional requirements: "predominance" and "superiority. *See* Fed.

15

R. Civ. P. 23(b)(3); *see also Rudel Corp.*, 2017 WL 4422416, at *3.   As discussed above, predominance is satisfied here.   As to superiority, Rule 23(b)(3) provides a four-factor list that a court may use to assess whether class adjudication is superior to other forms of adjudication:

(A)   the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)   the likely difficulties in managing a class action.

All four factors support class adjudication.   Where individual claims are modest, class members' interest in bringing individual actions is low.   *See Jones v. Commerce Bancorp, Inc.*, No. 05-cv-5600, 2007 WL 2085357, at *4 (D.N.J. July 16, 2007).   That is the case here, where individual claims of class members are relatively small in monetary value.   *See Atis*, 2016 WL 7440465, at *8.   Nor is the Court aware of other litigations concerning this controversy, which is appropriately concentrated in New Jersey, where Defendant is headquartered.   *Id.* Lastly, management difficulties are less likely when, as here, common questions predominate regarding the claims under New Jersey, Pennsylvania, and Indiana law.   *See id.*   Having satisfied the superiority requirement, this case meets all the requirements of Rule 23(a) and Rule 23(b)(3).

### 2.   Final Certification of FLSA Collective Action Settlement Class

Next, Plaintiffs seek to finally certify an FLSA collective action settlement class under 29 U.S.C. § 216(b), also on a provisional basis for settlement purposes only.   (Pls.' Br. at 1.)   Courts employ a two-step process for approving FLSA classes, an initial "conditional" certification and a later "reconsideration" phase.   *See Atis*, 2016 WL 7440465, at *3.   The Court has already conditionally certified the FLSA collective action in this case, *id.*, and Plaintiffs seek an unopposed order finally certifying that same class.   (Doc. No. 79-7.)   The Court previously defined the class as: "All persons who are or were employed by Freedom Mortgage Corporation

as an Assistant Vice President of Sales in any of its offices during the three years prior to the date of notice, classified as exempt, and not paid overtime compensation for each hour worked beyond forty (40) hours in a workweek." *Atis*, 2016 WL 7440465, at *5; (Doc. Nos. 41, 48.)

To certify a case as a collective action under the FLSA, the Court must determine that employees in the class are "similarly situated," within the meaning of § 16(b) of the Act. *See Matson v. SCO, Silver Care Operations, LLC*, No. 17-cv-1918, 2018 WL 1027448, at *4 (D.N.J. Feb. 23, 2018) (citing *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-1248, 2011 WL 1344745, at *17 (D.N.J. Apr. 8, 2011)). The "factors to reach a final determination on class certification under the FLSA . . . include '(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendants] which appear to be individual to each plaintiff, [and] (3) fairness and procedural considerations.'" *Bredbenner*, 2011 WL 1344745, at *17 (alterations in original) (quoting *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987)). The analysis for final certification "largely overlap[s] with class certification under Federal Rule of Civil Procedure 23(a)." *Matson*, 2018 WL 1027448, at *4 (quoting *Bredbenner*, 2011 WL 1344745, at *17)). Thus, the Court need only address the above factors "in passing." *Bredbenner*, 2011 WL 1344745, at *17 (citation omitted).

For substantially the same reasons as the Rule 23 standards are met, the Court finds that the FLSA collective action meets the standard to be finally certified on a provisional basis for settlement purposes only. As explained, the issues are common to the class members and not based on a disparate factual and employment setting. Defenses do not appear individual to each plaintiff, and procedural or fairness issues are not apparent at this juncture. In light of the general benefits of collective actions in lowering costs to plaintiffs and limiting the controversy

to one proceeding, as well as the public interest in settling class action litigation,[7] the Court will finally certify the FLSA collective action for settlement purposes only.

### C.  Approval of Class Notice

In approving a class settlement, a district court must also "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1); *see also Shapiro v. All. MMA, Inc.*, No. 17-cv-2583, 2018 WL 3158812, at *7 (D.N.J. June 28, 2018).  To satisfy the notice requirement, the party proposing settlement must comply with the guidelines contained in Rule 23(c)(2) and 23(e)(2).  *Id.*  Rule 23(c)(2)(B) provides that in Rule 23(b)(3) class actions, the Court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  *See Shapiro*, 2018 WL 3158812, at *7.  The notice must clearly and concisely state in plain, easily understood language:

    i.    the nature of the action;
    ii.    the definition of the class certified;
    iii.    the class claims, issues, or defenses;
    iv.    that a class member may enter an appearance through an attorney if the member so desires;
    v.    that the court will exclude from the class any member who requests exclusion;
    vi.    the time and manner for requesting exclusion; and
    vii.    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2).

The form of notice is committed to the district court's discretion, "subject to due process requirements."  *Zimmer Paper Prods., Inc. v. Berger & Montague*, 758 F.2d 86, 90 (3d Cir. 1985).  Due process requires notification (1) of "the nature of the pending litigation"; (2) of "the settlement's general terms"; (3) "that complete information is available from the court files"; and

---

[7] *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings.").

(4) "that any class member may appear and be heard at the Fairness Hearing." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997). Although the notice "need not be unduly specific," *In re Diet Drugs*, 226 F.R.D. at 518 (E.D. Pa. 2005), it must "describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *Id.* (citing *In re Diet Drugs*, 369 F.3d 293, 308–10 (3d Cir. 2004)).

Here, the proposed notice and notice plan provides detailed information, in plain English, about the rights of class members, including how to lodge objections; the nature of the class action and its history; the proposed $4,000,000 settlement; the process for opting in, out, and filing consent forms; a deadline of forty-five days to opt in, out, or object; a description of how the claims will be processed; the fees and expenses that will be sought by Class Counsel from the settlement fund; the services fees sought from the settlement fund; how to get more details about the settlement from the contact information provided; the case name and number of the lawsuit; and the date, time, and location of the final fairness hearing. (*See* Doc. No. 79 at Ex. 1-B.)

The notice, which must be sent via first class mail and emailed to the last known addresses of potential members (Agreement at §§ 4.6, 4.8(A), 4.12(B)), also clearly instructs potential objectors to contact both the Court and a yet-to-be-determined third party and explains the rights class members give up. The forms "fairly, accurately, and neutrally describe the claims and parties in the litigation as well as the terms of the proposed settlement and the identity of persons entitled to participate in it." *See Shapiro*, 2018 WL 3158812, at *7 (citing *Foe v. Cuomo*, 700 F. Supp. 107, 113 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1989)). In short, they are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citing

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Rule 23 and due process are both satisfied by the notice forms here.

### D.  Additional Requests For Appointments and Fees and Costs

Plaintiffs also seeks several additional items (Doc. No. 79-7), including orders: (1) appointing David Atis, Kathryn Hertzog, and Joseph Koeberlein as representatives of the settlement class; (2) preliminarily approving of the service payments of $10,000 for Named Plaintiff Atis, $5,000 each for Representative Plaintiffs Hertzog and Koeberlein, and $750 each for Plaintiffs Steve Dewitt, Russel Mates, Shawn Menne, and Saul Walle, who all provided written discovery responses and sat for depositions; (3) appointing Swartz Swidler, LLC as Class Counsel; (4) preliminarily approving Class Counsel's requested fee of thirty-three and a half percent of the Settlement fund and Class Counsel's reasonable costs; (5) appointing Angeion Group, LLC as the Third Party Administrator of the Settlement and preliminarily approving their reasonable fees and costs, to be paid from the settlement fund; and (6) setting a date for the final fairness hearing and for Class Counsel to file a motion for final approval of the Agreement.

The Court will appoint Swartz Swidler as Class Counsel, Angeion as Third-Party Administrator, and Atis, Hertzog, and Koeberlein as Representative Plaintiffs for the settlement class.  As noted above, the Court finds Swartz Swidler experienced in these matters, and that the proposed Representative Plaintiffs would adequately fulfill representative duties.  Angeion also has experience administrating and distributing class settlements, including in the wage and hour context.  (Doc. No 79-6 at Ex. 2.)

The Court will also preliminarily approve Angeion to recover from the fund its reasonable fees and costs incurred in distributing the settlement as provided in the Agreement. (Agreement at § 4.5.)  Angeion estimates that it will incur about $19,974 for its work distributing

the settlement.  (Doc. No. 79-5 at Ex. 1-C.)  Although final recovery is subject to final approval at the fairness hearing, the Court finds this amount preliminarily acceptable considering the potential difficulties in administering the claims at issue.  (Pls.' Br. at 26–28.)

However, the Court declines to preliminarily approve any service payments to the individuals listed and Class Counsel's fees and costs.   These determinations are more appropriately made at the final fairness hearing, which is scheduled for February 26, 2019 at 9:30 A.M.  A motion for final approval of the Agreement should be filed by December 28, 2018.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiffs' motion is **GRANTED IN PART**.



Dated:   11/6/2018                                              /s Robert B. Kugler
                                                                ROBERT B. KUGLER
                                                                United States District Judge